UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROSELAINE JEAN,

    Plaintiff,

v.        Case No: 2:16-cv-569-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Roselaine Jean seeks judicial review of the denial of her claims for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs and the applicable law. For the reasons discussed herein, the decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** pursuant to 42 U.S.C. § 405(g), sentence four.

I.    **Issues on Appeal**[1]

Plaintiff raises three issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly denied Plaintiff's request for a Creole interpreter; (2) whether the ALJ was unbiased, impartial and fair in adjudicating Plaintiff's claims; and (3)

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

whether the ALJ properly did not consider Plaintiff's neck injury and intellectual functioning in assessing her residual functional capacity ("RFC").

## II. Procedural History and Summary of the ALJ's Decision

On September 30, 2010, Plaintiff filed an application for SSI. Tr. 170-78. On her application for SSI, Plaintiff alleged that her disability began October 1, 2000[2] due to epilepsy/seizure disorder. Tr. 200. Plaintiff's claim was denied initially and upon reconsideration. Tr. 115-17, 125-26. Plaintiff requested a hearing before an ALJ and received a hearing before ALJ Larry J. Butler on October 24, 2012. Tr. 132-47. On October 23, 2012, Plaintiff filed an application for a period of disability and DIB. Tr. 197-98. Plaintiff alleged that her disability began January 30, 2004 on her application for DIB and also requested that this application be merged with her application for SSI. Tr. 154, 197-98. On October 24, 2012, Plaintiff, who was represented by counsel, appeared and testified at the hearing before the ALJ. *See* Tr. 30-72. Plaintiff's daughter also appeared and testified, in part, at the hearing.[3] Tr. 57-71.

On December 29, 2014, the ALJ issued a decision finding Plaintiff not disabled from January 30, 2004 through the date of the decision. Tr. 13-22. At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security

---

[2] Plaintiff amended her alleged onset date to January 30, 2004 during a hearing before the ALJ. Tr. 33-34.

[3] At the hearing, Plaintiff's counsel did not examine Plaintiff because of Plaintiff's limited ability to speak English. Tr. 40. Instead, counsel decided to call Plaintiff's daughter as a witness and question her. Tr. 57-71. The Court will address Plaintiff's limited ability to speak English in a separate section because Plaintiff raises a related issue on appeal. Doc. 25 at 8-15.

Act through June 30, 2004 and has not engaged in substantial gainful activity since January 30, 2004, the alleged onset date. Tr. 15. At step two, the ALJ found that Plaintiff has one severe impairment: epilepsy. *Id.* Proceeding to step three, the ALJ found that Plaintiff does not have "an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 18. At step four, the ALJ found that Plaintiff has the RFC to perform light work,[4] except that "[she] must avoid climbing ladders, ropes, or scaffolds and exposure to hazards such as moving machinery or unprotected heights." *Id.* Next, the ALJ determined that Plaintiff has no past relevant work. Tr. 20. Considering Plaintiff's age, education, work experience and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy Plaintiff could perform. Tr. 21. As a result, the ALJ concluded that Plaintiff had not been under a disability from January 30, 2004 through the date of the decision. *Id.*

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on May 19, 2016. Tr. 1-3. Accordingly, the ALJ's December 29, 2014 decision is the final decision of the Commissioner. Plaintiff filed

---

[4] The regulations define light work as work that involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

-3-

an appeal in this Court on July 20, 2016. Doc. 1. Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review. Docs. 17, 19.

### III. Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).[5] The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. §416.920. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her]

---

[5] The Court notes that after Plaintiff filed her applications and the ALJ issued the decision, certain Social Security rulings and regulations have been amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments. *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c and 404.1527 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016). The Court will apply rules and regulations in effect at the time of the ALJ's decision. *Green v. Soc. Sec. Admin., Comm'r*, — F. App'x —, 2017 WL 3187048, at *4 (11th Cir. July 27, 2017) (in reviewing the ALJ's decision, refusing to apply SSR 16-3p retroactively because "administrative rules are not generally applied retroactively."); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply."). *See also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (holding that when the Appeals Council denies review of the ALJ's decision, appellate courts review the ALJ's decision as the Commissioner's final decision).

past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.* at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). Where

the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir.1971)). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

IV. **Discussion**

 a. *Whether the ALJ properly denied Plaintiff's request for a Creole interpreter*

Plaintiff is a naturalized citizen of the United States whose native language is Creole-Haitian. Tr. 32-36. Prior to Plaintiff's hearing before the ALJ, her counsel requested that an interpreter be provided to her at the hearing. Tr. 261-62. Plaintiff's counsel renewed this request at the hearing. Tr. 32-40. Plaintiff's counsel indicated during the hearing that:

> I was [s]peaking in English with the daughter. I got the impression that [Plaintiff] was trying to answer my questions but that she did not always understand when I asked my question completely.

Tr. 36. Over the objection of Plaintiff's counsel, the ALJ decided to proceed without an interpreter:

> Plaintiff's counsel: Your Honor, [Plaintiff] does not understand English completely. I don't –
>
> ALJ: You just told me you could speak some English. Do you speak English?
>
> Plaintiff: No, it's so-so. No.
>
> ALJ: You told me you could answer some questions in English, didn't you? You're under oath.
>
> Plaintiff: Okay. . . .

Tr. 40. The ALJ further stated:

> ALJ: I don't think it makes any difference what [Plaintiff's] first language is. The question is, and I have explained this in writing to your law firm several times. In my opinion, it's what the regulation states and that's her ability to communicate in English. That doesn't mean she has to be bilingual or born in the United States. Her primary language might be any language in the world. But the question is, can she communicate in English? As I understand her, she can answer my questions. So we're going to go forward on this and I'll see how she does.

Tr. 33. The ALJ then began questioning Plaintiff without the assistance of an interpreter. Tr. 40. Plaintiff's counsel decided to question Plaintiff's daughter instead of Plaintiff because of Plaintiff's limited English. *Id.*

In his decision, the ALJ further explained his reasons for denying Plaintiff's request for an interpreter:

> [Plaintiff] stated that she speaks both English and Creole at home. She attended high school through the tenth grade in Haiti before coming to the United States. [Plaintiff] became a naturalized U.S. citizen on

September 28, 1993 (Bl5B/5). [Plaintiff] previously completed training and was certified as a [Certified Nursing Assistant ("CNA")]-training and certification being conducted in the English language. [Plaintiff] also worked as a cashier at Wal-Mart through the year 2000.

On October 23, 2012 (the day before [Plaintiff's] hearing), a Title II application for [Plaintiff] was faxed to the Hearing Office. [Plaintiff's] Title II application identified an Alleged Onset Date *(AOD)* of January 30, 2004 (Bl5B/4). The *AOD* of January 30, 2004 is one day after the prior unfavorable decision issued on January 29, 2004, for which the Appeals Council denied a request for review on September 22, 2004. The section of [Plaintiff's] Title II application entitled "Language Preferences" stated:

Preferred language for speaking: **ENGLISH**
Preferred language for reading: **ENGLISH** (Bl5B/5).

. . .

The undersigned finds that [Plaintiff] is able to communicate in English, as contemplated by 20 CFR 404.1564 and 416.964. [Plaintiff] has been in the Unites States in excess of three decades and a naturalized citizen for in excess of two decades. [Plaintiff] spoke English at her prior disability hearing without the assistance of an interpreter (resulting in an unfavorable decision issued on January 29, 2004, for which the Appeals Council subsequently denied a request for review). [Plaintiff's] daughter was present at [Plaintiff's] prior hearing[6] and testified that an interpreter was not used (12:27:40). At [Plaintiff's] prior disability hearing, [Plaintiff] was represented by an attorney. [Plaintiff] completed CNA schooling, certification, and licensing in English. [Plaintiff's] Consultative Examination (CE) dated April 28, 2009 (a general clinical evaluation with mental status conducted by a licensed psychologist) was conducted in the English language. There is no indication in the CE report that [Plaintiff] exhibited any difficulty in completing the interview and evaluation process using the English language. The CE report states that although [Plaintiff's] daughter drove [Plaintiff] to the appointment, the daughter did not accompany [Plaintiff] during the evaluation (B4F/3). The request of [Plaintiff's] representative dated October 24, 2012 for a supplemental hearing using an interpreter is denied.

---

[6] The ALJ noted in his decision that Plaintiff previously filed an application, which was denied. Tr. 13. The decision denying Plaintiff's previous application is not before this Court.

Tr. 19-20.

Plaintiff argues that the ALJ violated Plaintiff's due process rights by denying her request for a Creole interpreter in violation of the Hearings, Appeals, and Litigation Law Manual ("HALLEX") and the Social Security Administration's ("SSA") rules and policies. Doc. 25 at 8-11. Plaintiff argues that she did not receive a full and fair hearing because her limited understanding of the English language impaired her ability to testify. *Id.* at 11-15. The Commissioner responds that HALLEX does not have the force of law on the Commissioner, and Plaintiff has not shown that the ALJ's noncompliance with HALLEX is subject to judicial review. Doc. 29 at 3-7. The Commissioner further argues that even if HALLEX is binding, it did not require the ALJ to obtain an interpreter for Plaintiff, and Plaintiff was not prejudiced by the absence of an interpreter. *Id.* at 7-10. For the reasons discussed herein, the Court finds that the ALJ did not fully develop the record by denying Plaintiff's request for an interpreter.

It is well established that "[t]he ALJ has a basic duty to develop a full and fair record." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (citing *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (*per curiam*)); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997) (the ALJ has an affirmative duty to develop the record fully and fairly). The Supreme Court has held that "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-

11 (2000). "This obligation exists even if the claimant is represented by counsel, or has waived the right to representation." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)). Thus, an ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Cowart*, 662 F.2d at 735 (internal quotation marks omitted). In determining whether the ALJ properly developed the record, the Court is "guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Graham*, 129 F.3d at 1423 (citing *Brown*, 44 F.3d at 934-35).

Here, the Court finds that the ALJ did not fully develop the record by conducting his hearing without the assistance of an interpreter. As evidenced by the hearing transcript, Plaintiff's counsel clearly notified the ALJ that Plaintiff needed the assistance of an interpreter because she has only a limited understanding of English. Tr. 36. Plaintiff's counsel indicated Plaintiff did not fully understand her counsel's questions in English, and her daughter also testified during the hearing that Plaintiff could not fully answer questions asked in English. Tr. 36, 62. Plaintiff's counsel further clarified during the hearing that his staff, not Plaintiff, indicated Plaintiff's preferred language as English on her application for DIB, and the staff completed the application with the help of Plaintiff's daughter. Tr. 34. Counsel stated that indicating Plaintiff's preferred language as English also helped his staff avoid having to interact with a Creole-Haitian interpreter from the agency. Tr. 34-35; *cf.* Tr. 19 (noting Plaintiff's application for DIB indicates her preferred language as English).

In addition, before the ALJ began questioning Plaintiff, Plaintiff stated that her ability to speak English is limited. Tr. 40. Plaintiff also indicated on her disability report that she does not speak or understand English, and her preferred language is Creole-Haitian. Tr. 199. In addition, as Plaintiff discusses, Plaintiff's primary physician, Alphonsus Zohlandt, M.D., noted on April 4, 2009 that "because of [Plaintiff's] limited English, [she] was not able to explain to [the doctor] what type of pain and how strong the pain was." Tr. 359; Doc. 25 at 14-15.

Despite this ample evidence indicating Plaintiff's limited ability to speak English, the ALJ chose to proceed without an interpreter, which discouraged Plaintiff's counsel from questioning Plaintiff and led to Plaintiff's incomplete testimony at the hearing:

> ALJ: Okay, [Immigration and Naturalization Service] did not ask you about your English language abilities when you were naturalized. Is that correct?
>
> Plaintiff: I can.
>
> . . .
>
> ALJ: What do you do on an average day? What did you do yesterday?
>
> Plaintiff: I just read and the seizure will shake me.
>
> ALJ: The what now?
>
> Plaintiff: The seizure will shake me yesterday. I just lay down all day.
>
> ALJ: Okay, say it again, a little slower.
>
> Plaintiff: The seizure will shake me. I was lay down all day yesterday. Because I - -
>
> . . .

> ALJ: Yeah. You laid down all day yesterday. When was the last time before that you had to lay down all day?
>
> Plaintiff: By 10 o'clock last night, I get up this morning. . . .

Tr. 41-42.

Courts have found that an ALJ did not develop a full and fair record when a claimant, as here, was unable to provide effective testimony without the assistance of an interpreter. *Tuthill v. Astrue*, No. C09-5468BHS, 2010 WL 3195789, at *1-*3 (W.D. Wash. Aug. 10, 2010) (finding the ALJ's failure to fully develop the record because "there [was] clearly a lack of consistent effective communication between the ALJ and [the claimant]" due to the claimant's limited ability to communicate in English); *Novikov v. Astrue*, No: C07-5415BHS, 2008 WL 4162941, at *2-*5 (W.D. Wash. Sept. 2, 2008) (holding the ALJ did not fully develop the record because "[the claimant's] answers generally were incomprehensible and because it was uncertain he understood the questions posed to him, the ALJ should have required the aide of the translator who was present at the meeting to ensure creation of a good record."); *Di Paolo v. Barnhart*, No. 01-CV-3123 (JG), 2002 WL 257676, at *5-*6, *8 (E.D.N.Y. Feb. 8, 2002) (finding that "in failing to provide [the claimant] with an interpreter, the ALJ in this case neglected to fulfill his duty to develop the factual record by effectively examining [the claimant]. Without an interpreter, [the claimant] was unable to communicate her position and was therefore denied her right to a full and fair hearing.").

Although the decisions cited above are not binding on this Court, the Court finds them persuasive because the facts and legal issues presented in those cases are substantially similar to those at issue here. Accordingly, the Court finds that the ALJ failed to develop a full and fair record because Plaintiff, as evidenced by the discussion above, was unable to testify effectively, and her counsel was deprived of an opportunity to examine her. *See* Tr. 40-57; *Tuthill*, 2010 WL 3195789, at *1-*3; *Novikov*, 2008 WL 4162941, at *2-*5; *Di Paolo*, 2002 WL 257676, at *8. Accordingly, the Court will remand this case and order the ALJ to fully develop the record with the assistance of an interpreter.

### b. *Plaintiff's remaining issues*

Plaintiff also argues that the ALJ's personal beliefs, legal disputes with the agency and proceedings involving Plaintiff's counsel compromised the process in this case. Doc. 26 at 15-20. Plaintiff further asserts that the ALJ erred by not considering Plaintiff's neck injury and borderline intellectual functioning in assessing her RFC. Doc. 26 at 20-21. Because this case must be remanded for a full and fair development of the record with the assistance of an interpreter, the Court will direct the ALJ to reconsider Plaintiff's neck injury and borderline intellectual functioning. In addition, the Court will direct the Commissioner to assign this case to a different ALJ on remand in order to avoid the appearance of bias or prejudice against Plaintiff or her counsel, although the Court does not make specific findings regarding the ALJ's alleged bias in this case.

## V. Conclusion

Upon review of the record, the undersigned concludes that for the reasons cited in this Opinion and Order, the ALJ did not develop a full and fair record. Accordingly, the Court will remand this case to a different ALJ for further proceedings in order to avoid the appearance of bias or prejudice against Plaintiff or her counsel.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The decision of the Commissioner is **REVERSED,** and this matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to:

   A. Develop a full and fair record by conducting a hearing with the assistance of an interpreter;

   B. Consider and evaluate Plaintiff's neck injury and borderline intellectual functioning; and

   C. Conduct any further proceedings deemed appropriate.

2. The Commissioner shall reassign this case for rehearing to an Administrative Law Judge other than Administrative Law Judge Larry J. Butler.

3. The Clerk of Court is directed to enter judgment accordingly, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 29th day of September, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record